UNITED STATES DISTRICT COURT
for the SOUTHERN DISTRICT OF INDIANA,
INDIANAPOLIS DIVISION

| | |
|---|---|
| **LIGHT ENGINEERING CORP.,** )  | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| *vs.*                )                               | CAUSE NO.  1:12-cv-1379-RLY-DKL |
| ) | |
| **HEAVY QUIP, INC.,** ) | |
| ) | |
| **Defendant.** ) | |

**REPORT AND RECOMMENDATION**

**to Remand this Cause for Lack of Subject-Matter Jurisdiction**

At the initial pre-trial conference in this Cause, this magistrate judge raised, *sua sponte*, the issue of whether the amount-in-controversy threshold for diversity jurisdiction had been met at the time of removal.  Defendant was ordered to show cause why the Court has subject-matter jurisdiction and Plaintiff was afforded an opportunity to respond thereto.  *Entry from Initial Pre-trial Conference / February 26, 2013* [doc. 29] ("*Pre-trial Entry*").  Defendant submitted its showing, *Response of Heavy Quip, Inc. to Court's Order of February 26, 2013 Regarding Subject Matter Jurisdiction* [doc. 32] ("*Response*"); Plaintiff did not submit a response.[1]  The district judge referred this jurisdictional question to this magistrate judge under 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b)(1) for submission of proposed

---

[1] After Heavy Quip filed its *Response*, Light Engineering belatedly filed its response to the *Notice of Removal* as required by S.D. Ind. L.R. 81-1(b).  *Local Rule 81-1(b) Response to Notice of Removal* [doc. 35] ("*L.R. 81-1(b) Response*").  In this filing, Light Engineering stated its position that removal was improper because the amount in controversy was insufficient and that the value of Heavy Quip's counterclaim should not be considered in the calculation.

1

findings and a recommended disposition. *Entry Referring Matter to Magistrate Judge Denise LaRue* [doc. 33]. Having considered Defendant's *Response*, the law, and the circumstances, this magistrate judge finds that the amount-in-controversy threshold has not been met and recommends that this Cause be remanded to the state court from which it was removed.

Plaintiff Light Engineering Corporation initiated this suit by filing a complaint against defendant Heavy Quip, Inc. in state court on August 29, 2012.[2] *Verified Complaint for Declaratory Relief, Injunctive Relief, and Damages* [doc. 1-1, p. 4] ("*Complaint*"). The *Complaint* makes the following allegations. Light Engineering sold 300 Yanmar Engines to Heavy Quip, which paid for the engines and took possession of them up from a third-party bailee. Heavy Quip contends that the parties had an agreement for the sale of an additional 300 Yanmar engines and that it has already contracted to re-sell the additional engines to customers. Light Engineering denies that such an agreement exists. The additional 300 engines are still in the hands of the third-party bailee and Heavy Quip is interfering with and/or threatening to interfere with Light Engineering's ability to take possession of them from the bailee. The parties thus dispute the existence of an agreement and the ownership and possession of the engines.

Light Engineering's *Complaint* asks for (1) a judgment declaring that no contract exists between the parties regarding the remaining 300 engines and that Light Engineering

---

[2] Three additional defendants were voluntarily dismissed by Light Engineering before the case was removed. [Doc. 1-1, p. 51.]

is entitled to ownership and possession of the 300 engines in the hands of the bailee; (2) an injunction enjoining Heavy Quip from interfering with Light Engineering taking possession of the engines; and (3) "any and all available damages . . . if permissible," including costs, damages, statutory damages ("including but not limited to, three (3) times actual damages"), fees, and collection expenses. The *Complaint* does not specify any legal cause of action, either common-law or statutory, or any pecuniary injuries or losses suffered.

Heavy Quip timely filed its *Notice of Removal* on September 26, 2012, pursuant to 28 U.S.C. §§ 1441 and 1446 [doc. 1]. Under § 1441, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." Heavy Quip's *Notice of Removal* asserts diversity jurisdiction under 28 U.S.C. § 1332(a)(2), [doc. 1, ¶ 1], but the Court assumes that it meant § 1332(a)(1). Diversity jurisdiction under § 1332(a)(1) extends to those suits "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different states."

There is no dispute and no apparent problem with the parties' diversity: Light Engineering's state of incorporation is California and its principal place of business is Indiana, and Heavy Quip's state of incorporation and principal place of business is Illinois. *Notice of Removal* ¶ 2; *L.R. 81-1(b) Response* ¶ 1. The *Notice of Removal*'s allegation that the amount-in-controversy threshold is satisfied consists solely of the following:

3

>The amount in controversy exceeds the jurisdictional minimum. At issue in this case is whether Plaintiff breached a contract to sell 300 engines to HQ [Heavy Quip] for $200.00 each, which engines HQ was to resell for $1,000.00 each resulting in damages to HQ of no less than $240,000.00.

*Notice of Removal* ¶ 3.

About two months after removal, Heavy Quip answered, *Answer and Affirmative Defenses to Plaintiff's Complaint* [doc. 18], and separately filed counterclaims against Light Engineering and a third-party claim against P. Adam Davis, Light Engineering's counsel, *Counterclaim and Third Party Complaint* [doc. 19]. Heavy Quip asserts counterclaims of breach of contract and tortious interference with business interests and relationships. It seeks damages of not less than $240,000, the profit it expects on resale of the subject engines.[3]

Because the Court has an independent responsibility to ensure that it has jurisdiction, *Hukic v. Aurora Loan Services*, 588 F.3d 420, 427 (7th Cir. 2009), and it appeared from the *Notice of Removal* that Heavy Quip was relying solely on its post-removal counterclaim to exceed the $75,000 threshold for jurisdiction, Heavy Quip was ordered to show how the amount-in-controversy requirement had been met at the time of removal. *Pre-trial Entry*. The *Pre-trial Entry* cited caselaw "suggest[ing] that subsequently raised counterclaims may not be used after removal in order to calculate the amount in controversy" and noted that, as the proponent of federal jurisdiction, Heavy Quip bears the

---

[3] Resale of the 300 engines at $1,000 each to Heavy Quip's customers, less the alleged agreed purchase price from Light Engineering of $200 each.

burden of showing the existence of subject-matter jurisdiction.

In its *Response* to the *Pre-trial Entry*, Heavy Quip argues that, while typically the amount in controversy is determined solely by the well-pled allegations of the complaint without reference to any counterclaims, the rule is different in cases seeking equitable relief, *e.g.*, injunctions and declaratory judgments, rather than damages. It contends that, in such cases, courts look at the "amount at stake" to either party in the lawsuit or the value of the "object of the litigation" from either the plaintiff's or defendant's viewpoint. *Response* at 2-3. Heavy Quip's factual showing that the amount-in-controversy threshold is satisfied consists of the following:

> In this case, the plaintiff has asked that the Court declare that it has no obligation to sell the 300 Yanmar engines to Heavy Quip. In its Counterclaim and in its declaration of Notice of Removal, Heavy Quip declares that the value of its loss (by reason of Light Engineering's failure to honor its sales contract) is not less than $240,000. Thus, the object of this litigation is a sum not less than $240,000. If Plaintiff prevails in the case, it does not have to pay $240,000 or more as damages. If Defendant prevails, it will recover from the Plaintiff a sum not less than $240,000 for breach of contract. The amount which is the object of the litigation in this case far exceeds the $75,000 current jurisdictional limit for diversity cases.

*Response* at 4.[4]

Heavy Quip's showing of the amount in controversy addresses only Light

---

[4] Heavy Quip did not submit evidence of its alleged resale agreements. Because it did not file a response, there is no challenge by Light Engineering to these jurisdictional allegations by Heavy Quip. Other than generally denying Heavy Quip's counterclaim allegation of receiving purchase orders for all of the subject engines, *Counterclaim and Third Party Complaint* [doc. 20] ¶ 13; *Counter-defendants' Answer and Defenses* [doc. 23] ¶ 13, Light Engineering has not questioned the veracity of Heavy Quip's allegations regarding its resale agreements.

Engineering's claims for equitable relief (a declaratory judgment and an injunction). Because it has the burden, as the proponent of jurisdiction, to show the amount in controversy and it did not assign or show any value to Light Engineering's request for "any and all available damages to Plaintiff, if permissible . . . ," *Complaint* at 3, the Court assigns no value to the claim and restricts it analysis to the value of Light Engineering's claims for equitable relief. The Court notes that, in its *L.R. 81-1(b) Response* to the *Notice of Removal*, Light Engineering declared that it asserted "a general request for damages in the event damages arose from the violation of Plaintiff's possession of said certain items. Therefore, based on Plaintiff's Complaint, which controls removal, the amount in controversy is insufficient to satisfy the constitutional requirement of diversity jurisdiction." *L.R. 81-1(b) Response* at 2 (citation and footnote omitted). Because no damages sustained by Light Engineering have been alleged or shown to date, jurisdiction cannot be based on that claim. The Court also notes that Heavy Quip did not assert or show any pecuniary gain that Light Engineering stands to gain from its requested relief.[5]

"In all cases, the party asserting federal jurisdiction has the burden of proof to show that jurisdiction is proper. The 'proponent of jurisdiction may be called on to prove facts that determine the amount in controversy,' and must do so by a preponderance of the evidence." *Travelers Property Casualty v. Good*, 689 F.3d 714, 722 (7th Cir. 2012) (citation

---

[5] Although Heavy Quip alleges that, to its "best belief and knowledge," Light Engineering has sold the subject engines to another entity for a higher price than agreed with Heavy Quip, *Counterclaim and Third Party Complaint*, ¶ 16, Heavy Quip did not allege or show any additional profit that Light Engineering would make on its alleged sales if it is awarded its requested declaratory judgment.

omitted). "The removal statute should be construed narrowly and any doubts about the propriety of removing a particular action should be resolved against allowing removal." *Wirtz Corp. v. United Distillers & Vintners N. A., Inc.*, 224 F.3d 708, 715-16 (7th Cir. 2000).

"The amount in controversy is the amount required to satisfy the plaintiff's demands in full on the day the suit began, or in the event of removal, on the day the suit was removed." *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 510-11 (7th Cir. 2006). The amount of damages pled (in good faith) in a complaint ordinarily controls the determination of the amount in controversy unless it is shown that recovering the jurisdictional threshold is legally impossible. *Andrews v. E. I. Du Pont De Nemours and Co.*, 514-15 (7th Cir. 2006); *Rising-Moore v. Red Roof Inns, Inc.*, 435 F.3d 813, (7th Cir. 2006). If a specific dollar amount is not pled — *e.g.*, when a case is removed, as this one was, from the court of a state that forbids specific damages pleading — then the proponent of jurisdiction must show, by other means, a reasonable probability that the amount-in-controversy threshold is met. *Rising-Moore*, 435 F.3d at 815-16. As pointed out in the *Pre-trial Entry*, the better-reasoned and majority rule is that counterclaims, particularly counterclaims filed after removal, may not be considered in calculating the amount in controversy. *Plant Engineering Services, Inc. v. SIFCO Forge Group*, No. 1:12-cv-231-JD-RBC, *Opinion and Order*, 2012 WL 5398308, *2-3 (N.D. Ind., Nov. 5, 2012); *Tuminaro v. Garland Co., Inc.*, No. 11-cv-203-bbc, 2011 WL 5983303, *1 (W.D. Wisc., Nov. 29, 2011); *Warren Loveland, L.L.C. v. Keycorp Investments, L.P. IV*, No. 05-C-162-C, *Opinion and Order*, 2005 WL 1427707, *3-4 (W.D. Wisc., June 17, 2005); *Kenray,*

*Inc. v. Judson Atkinson Candies, Inc.*, No. NA 02-132-C-B/H, 2002 WL 2012439 *4 (S.D. Ind., Aug. 28, 2002).

In cases seeking equitable relief, rather than damages, the Court of Appeals for the Seventh Circuit follows the "either viewpoint" approach for calculating the amount in controversy. The court has variously and generally described this standard as "the stakes either from the point of view of the plaintiff or the defendant," *America's Moneyline, Inc. v. Coleman*, 360 F.3d 782, 787 (7th Cir. 2004), the "'pecuniary result' that would flow to the plaintiff (or defendant) from the court's granting the injunction or declaratory judgment," *id.* at 786, "the amount at stake to either party to the suit," *BEM I, L.L.C. v. Anthropologie, Inc.*, 301 F.3d 548, 553 (7th Cir. 2002), and, from the defendant's viewpoint, "what [the defendant] may lose in the suit," *id.* From these general statements, some litigants have argued, and some courts have held, that an equitable case may be valued by the pecuniary result or consequence to the defendant if the plaintiff prevails. However, more precise definitions by the Court and its specific holdings clarify that the value of an equitable case from a defendant's viewpoint is the pecuniary cost to the defendant of *complying with* a declaratory judgment or injunction in favor of the plaintiff, *Macken*, 333 F.3d at 799-800 ("at least in this circuit, the object [of equitable litigation] may be valued from either perspective — what the plaintiff stands to gain or what it would cost the defendant to meet the plaintiff's demand"); *Uhl v. Thoroughbred Technology and Telecommunications, Inc.*, 309 F.3d 978, 983 (7th Cir. 2002) ("In this circuit . . . it is established that the jurisdictional amount

should be assessed looking at either the benefit to the plaintiff or the cost to the defendant of the requested relief — the so-called 'either viewpoint' rule. Those cases specifically establish that the cost to a defendant of complying with an injunction sought by a plaintiff may properly be considered in determine the amount in controversy" (emphasis added, citations omitted)), or the *direct* or *immediate* pecuniary result to a defendant of the requested equitable relief, *McCarty v. Amoco Pipeline Co.*, 595 F.2d 389, 393, 395 (7th Cir. 1979). The either-viewpoint approach does not calculate every pecuniary consequence to a defendant that results from a judgment in favor of a plaintiff.

Heavy Quip contends that equitable actions are an exception to the rule that counterclaims may not be considered in determining the amount in controversy, *Response* at 2-3, but it failed to cite any Seventh-Circuit precedent for that proposition and the Court found none. While part of the damages sought in a counterclaim could duplicate a defendant's costs to comply with an injunction or its losses directly or immediately caused by a declaratory judgment in favor of a plaintiff, the theoretical basis for each type of cost or loss might be fundamentally different. No authority has been shown or found to deviate from the principle that a defendant's requested counterclaim damages cannot be included in the amount-in-controversy calculation, even in actions seeking equitable relief. *See Tuminaro*, 2011 WL 5983303, \*1; *Warren Loveland*, 2005 WL 1427707,\*4.

The two district-court decisions on which Heavy Quip relies do not support its argument. In *Nunn v. Witherell*, No. 12-C-3384, *Memorandum Opinion and Order*, 2012 WL

4338889 (N.D. Ill., Sept. 20, 2012), a co-owner of a residential property sued the other co-owner in federal court for a judgment declaring that, after the plaintiff's notice of withdrawal from the property pursuant to their ownership agreement, the defendant was responsible for 100% of all post-withdrawal payments related to the property (*viz.*, mortgage installments, property taxes, and property insurance). The plaintiff also sought damages of $34,000, representing half of the post-withdrawal property payments that the plaintiff continued to make when the defendant refused to assume full responsibility for them. The defendant moved to dismiss for lack of subject-matter jurisdiction because the $34,000 of damages sought was well below the required amount in controversy of $75,000. Heavy Quip contends that the *Nunn* court found that the jurisdictional threshold was satisfied by adding to the $34,000 damages sought by the plaintiff the present value of half of the future property-related payments at issue.

The *Nunn* decision fails to support Heavy Quip's jurisdictional argument in the present case. First, there is no indication in the *Nunn* decision that the defendant asserted a counterclaim that the court considered or included in its calculation. Second, the court described its calculation of the present value of half of the future property payments as the value of the pecuniary benefit that the plaintiff stood to gain if her requested declaratory judgment were granted, *i.e.*, the value of the future payments for which the plaintiff would no longer be responsible. Under the "either viewpoint" approach, this represents the value of the equitable relief sought from the plaintiff's viewpoint. But, because this amount is

10

exactly inverse to the defendant's potential loss, it also represents the value of the case from the defendant's viewpoint. *Nunn*, 2012 WL 4338889, *3 (the value of the future property payments is "the additional benefit that [the plaintiff] stands to gain, and that [the defendant] stands to lose"). There were no additional separate and independent items of potential loss asserted by the defendant that the court had to value that might have supported Heavy Quip's argument. Third, even viewed from the defendant's viewpoint, his responsibility for the other half of the future property expenses would be the direct and immediate result of the requested declaratory relief — not a result mediated through the effects of unrelated third-party agreements or extraneous conditions that would have required affirmative proofs and that could be recoverable *via* a counterclaim. Thus, *Nunn* actually supports not considering the value of Heavy Quip's counterclaim in calculating the amount in controversy in this case.

In *Camelback Properties v. Phoenix Insurance Co.*, No. 10-C-1467, *Memorandum Opinion and Order*, 2010 WL 2402929 (N.D. Ill., June 15, 2010), the second case relied upon by Heavy Quip, a plaintiff property owner sued its insurer in state court for a declaratory judgment that damage caused by a burst water pipe was a covered loss. The defendant insurer removed the case to federal court under diversity jurisdiction and the plaintiff moved to remand, arguing that, because it sought only equitable relief, the amount-in-controversy requirement was not satisfied.[6] The court found that "the object of the litigation is the cost

---

[6] Apparently unaware of this circuit's "either viewpoint" approach — or any need to determine the value of equitable relief for diversity jurisdiction — the plaintiff believed that its action had no value

11

of the repair and clean-up of the damage caused by the water pipe bursting," *id.* at *4, and it found that that cost exceeded $75,000, thus conferring diversity jurisdiction.

The *Camelback Properties* decision fails to support Heavy Quip's arguments in this case. While the court did state that "[f]rom Defendant's viewpoint, if floors, walls, and ceilings need to be replaced, then damages could be in excess of $75,000," *id.*, the viewpoint relationship was the same as presented in *Nunn*: the value from the defendant's viewpoint was the inverse of the plaintiff's viewpoint. The cost of repair and clean-up was both the gain faced by the plaintiff and the loss faced by the defendant from the requested declaratory judgment. Unlike Heavy Quip, the defendant in *Camelback Properties* did not plead a counterclaim based on, and did not assert any, separate and independent items of loss or cost that the court had to consider and value. Finally, the potential clean-up costs faced by the defendant in *Camelback Properties* would have been the direct and immediate results of the requested declaration, consistent with the either-viewpoint approach, not costs or losses mediated through other agreements or unrelated, independent circumstances.

As quoted above, Heavy Quip's grounds for satisfying the amount-in-controversy requirement is based solely on the damages sought in its counterclaim:

> . . . Heavy Quip declares that the value of its loss (by reason of Light Engineering's failure to honor its sales contract) is not less than $240,000.

---

because it did not seek money damages. Thus, according to the plaintiff's understanding in that case, equitable actions could never satisfy the amount-in-controversy requirement.

> Thus, the object of this litigation is a sum not less than $240,000. If Plaintiff prevails in the case, it does not have to pay $240,000 or more as damages. If Defendant prevails, it will recover from the Plaintiff a sum not less than $240,000 for breach of contract.

*Response* at 4. Because Heavy Quip can recover its requested $240,000 in damages only if it prevails on its counterclaim and because post-removal counterclaims cannot be included in calculating the amount in controversy, Heavy Quip has failed to demonstrate that the amount-in-controversy threshold had been satisfied at the time of removal. In addition, there is no asserted, shown, or conceivable cost to Heavy Quip of complying with the requested injunction prohibiting interference with Light Engineering taking possession of the subject engines from the bailee. Finally, Heavy Quip's alleged lost profit on its resale of the subject engines would not be a "direct" or "immediate" result of a judgment declaring that the parties did not have a contract for the sale of the remaining three hundred engines, but the result of a favorable judgment on its counterclaims. *See BEM I, L.L.C. v. Antropologie, Inc.*, 301 F.3d 548, 553-54 (7th Cir. 2002).[7]

---

[7] In *BEM I*, a commercial landlord sued its retail tenant in state court for unpaid rent and an order of eviction. The tenant removed the case to federal court. It did not plead a counterclaim. The landlord moved to remand the case because the past due rent at the time of removal totaled only $48,000, well below the $75,000 diversity threshold. The court of appeals affirmed the district court's denial of remand. While noting, for non-jurisdictional purposes, that the tenant anticipated generating hundreds of thousands of dollars of revenue during each month of the negotiated lease term, the court of appeals looked to only the tenant's lease-negotiation costs and the value of its improvements (which, according to the lease, reverted to the landlord at termination) as the value, from the tenant's viewpoint, of the landlord's requested equitable remedy of eviction. These costs and losses, which would be directly or immediately caused by the tenant's eviction, together with the past-due rent, were found to satisfy the amount-in-controversy requirement.

## Recommendation

Because Heavy Quip has not carried its burden to show that the amount in controversy exceeded $75,000 at the time of removal, this Cause should be remanded to the originating state court.

## Notice regarding objections

Within fourteen days after being served with a copy of this recommendation, either party may serve and file specific written objections thereto. 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2). A district judge shall make a *de novo* determination of those portions of the recommendation to which objections are made. 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(3). Failure to file an objection might result in forfeiture of the right to *de novo* determination by a district judge and to review by the court of appeals of any portion of the recommendation to which an objection was not filed. *Tumminaro v. Astrue*, 671 F.3d 629, 633 (7th Cir. 2011); *United States v. Pineda-Buenaventura*, 622 F.3d 761, 777 (7th Cir. 2010); *Schur v. L. A. Weight Loss Centers, Inc.*, 577 F.3d 752, 761 n. 7 (7th Cir. 2009); *Kruger v. Apfel*, 214 F.3d 784, 787 (7th Cir. 2000); *Johnson v. Zema Systems Corp.*, 170 F.3d 734, 739 (7th Cir. 1999).

**DONE this date:** 06/17/2013

*[signature]*
Denise K. LaRue
United States Magistrate Judge
Southern District of Indiana

Distribution to all ECF-registered counsel of record *via* ECF-generated e-mail.